**HIPKINS et al. v. UNITED STATES.**

Congressional No. 17866.

United States Court of Claims.
Decided April 7, 1953.

Aaron L. Ford, Washington, D. C., for the plaintiffs.

William W. Fleming, Washington, D. C., Warren E. Burger, Asst. Atty. Gen., for the defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

JONES, Chief Judge, delivered the opinion of the court.

This case comes to us pursuant to House Resolution 734, 81st Congress, 2d Session, which reads as follows:

"*Resolved,* That the bill (H.R. 5243) entitled 'A bill for the relief of Otho F. Hipkins, individually, and Otho F. Hipkins; Cecil Clyde Squier; Conrad Reid; J. Thomas C. Hopkins, Junior; and Isaiah Lawrence Paxton, as trustees of the Hipkins Traction Device Company,' now pending in the House of Representatives, together with all accompanying papers, is hereby referred to the United States Court of Claims pursuant to sections 1492 and 2509 of title 28, United States Code; and said court shall proceed expeditiously with the same in accordance with the provisions of said sections and report to the House, at the earliest practicable date, giving such findings of fact and conclusions thereon as shall be sufficient to inform the Congress of the nature and character of the demand, as a claim legal or equitable, against the United States, and the amount, if any, legally or equitably due from the United States to the claimants."

Plaintiffs' original petition was based upon three patents which were issued to Otho F. Hipkins.

The referred bill was in two parts. The first part related to services performed and expenses incurred by the plaintiff Otho F.

Hipkins and the Hipkins Traction Device Company.

The second part of the bill deals with the alleged unauthorized use by the Government of traction devices invented by Otho F. Hipkins and the infringement of Letters Patent Nos. 1,600,588, 1,600,589 and 2,008,210.

All three patents involved a traction device which would operate on trucks and other mobile vehicles in a somewhat similar manner to the way in which a caterpillar track is operated on a caterpillar tractor. The device involved here was intended to enable the faster and more mobile vehicles to operate satisfactorily on wet or sandy terrain.

We will deal with the second part of the bill first.

After the taking of the testimony in the case was completed the plaintiffs on June 16, 1952, filed a motion to dismiss the petition in part. The motion was as follows:

"In view of the small procurement of traction devices by the Government during the life of the first two patents in suit, plaintiffs, by and through their attorney, move to dismiss the petition insofar as it requires (a) a report to Congress and (b) judgment by this court on any unauthorized use of any claims of United States Letters Patent Nos. 1,600,588 and 1,600,589 under U. S.C., Title 28, Section 1498."

This motion was granted. Consequently this portion of the discussion of the referred bill will relate primarily to the last patent in suit, No. 2,008,210. Application for this particular patent was filed August 12, 1933 and the patent thereon issued July 16, 1935.

The first two patents mentioned above were assigned by Hipkins to the Hipkins Traction Device Company. The last mentioned patent was not assigned and remained the property of Otho F. Hipkins. As originally filed the last application for a patent contained various forms of structural claims. However, when the patent was issued it was specifically limited to certain structural features of an adjustable coupling shoe by means of which the length of

the traction device around the wheels could be adjusted.

A detailed description of the traction device is set out in findings 23 to 28, inclusive.

The alleged infringing structure was manufactured by Alliance Engineering, Inc., of Alliance, Ohio, pursuant to contracts entered into by that company with the defendant through the Office of the Chief of Ordnance of the War Department. A description of the alleged infringing structure is set out in detail in findings 29 to 32, inclusive.

■ A comparison of the description and illustrations of the Alliance structure with the phraseology of the claims of the Hipkins patent No. 2,008,210 as actually granted demonstrates clearly that there is little similarity in the shoes or locking devices of the two structures which was the part of the traction device that was covered by the last Hipkins patent. Consequently there is no infringement of the patent by the accused device.

### Prior Art

■ A British patent that was issued to Kennedy on March 23, 1933, a description of which is set out in finding 36, is for the same function and very similar in construction to that claimed in the last Hipkins patent. When contemplated in view of the prior art as explained in detail in finding 37, all the claims are anticipated except claim 3, which is quite limited in scope, and not infringed.

There is no proper basis for holding that the Government through the Alliance contracts utilized the subject matter of the Hipkins patent No. 2,008,210 as covered by the patent actually issued.

### The Implied Contract

Plaintiffs also present a claim for alleged authorized use of the invention covered by the three Hipkins patents in suit in connection with traction devices procured by the Government from other than the Hipkins Traction Device Company with special reference to the traction devices purchased by the Government under five contracts

with the Alliance company. These are listed in detail in finding 29.

Plaintiffs base this claim largely upon the conversation they claim took place between Otho F. Hipkins and Major Wallace some time in May 1930. They assert that this discussion resulted in a verbal understanding that the Government would either adopt the Hipkins traction device and purchase them from Hipkins or enter into a license agreement under the three patents in suit. Major Wallace died before the trial of the case.

There is no evidence which corroborates Hipkins as to this understanding and there is no evidence that Major Wallace had any authority to bind the Government in an agreement to purchase the Hipkins traction device.

Plaintiffs also rely upon a conversation which they claim Hipkins had with General Bishop, Chief of Field Artillery, in the early part of 1931, in which he quoted General Bishop as stating at the conclusion of the test that he was thoroughly convinced and satisfied that the use of the Hipkins traction device on the wheels of a commercial vehicle would materially increase its cross-country mobility and that there was no question in his mind that it could be considered as satisfactory as a light prime mover and a cargo vehicle for light Field Artillery purposes. General Bishop is also deceased, and there is no further evidence of this conversation, nor is there any evidence in the record that any Government agent with authority to bind the Government contractually guaranteed Hipkins that his device would be purchased in quantities other than those specified in the seven contracts entered into by the Government with the Hipkins Company and described in detail in finding 16.

On April 14, 1932, Hipkins assigned to the Hipkins Traction Device Company the first two patents involved in this suit. The only interest which he retained was as a stockholder and officer of the Hipkins Company.

On August 22, 1934, the Hipkins Traction Device Company granted to the Lukens Steel Company an exclusive license until December 31, 1945, to make, use and sell traction devices. The only exception to this exclusive license agreement was a reservation by the Hipkins company to manufacture and sell no more than 3,000 sets of traction devices to the Government.

The last directors' meeting of the Hipkins Company was held in June 1936 and Hipkins reentered Government employment on August 1, 1936. There is no evidence showing any activity on the part of the Hipkins Company after that date. On August 23, 1939, the Governor of the State of Maryland, by proclamation, annulled the charter of the Hipkins Traction Device Company for nonpayment of Maryland State taxes. As is set out in finding 38, the Government did not use any of the inventions forming the subject matter of the claims of Hipkins patent No. 2,008,210.

Part One of The Referred Bill

*Claim for Services and Expenses*

The plaintiff Hipkins alleges that he gave approximately six and one-half years of his personal time valued at $3,000 a year, or a total of $19,500, and spent approximately $17,500 in cash for equipment and in defraying expenses in demonstrating the Hipkins traction device to United States Army officials, and that after the Hipkins Traction Device Company was organized he spent three years of his time as president of that company, valued at $4,000 a year, or $12,000, and approximately $25,000 in cash of the Hipkins Traction Device Company's money as expenses in demonstrating the Hipkins traction device and in training Army personnel in its practical use and application.

For ease in consideration of this case, the claim for services and expenses has been divided into two periods. Period "A" extends from September 30, 1926, when Hipkins left the employment of the Government and organized the Hipkins and Paxton garage, to April 14, 1932, when the Hipkins Traction Company was incorporated and Hipkins became its president. Period "B" extends from the date of incorporation of the Hipkins Company until August 1, 1936, when Hipkins became reemployed by the Government.

During period "A" Hipkins became a partner in the garage business and engaged in the sale of various makes of automobiles and automobile accessories. Hipkins was owner and manager and received an income from the partnership (see finding 7, to which plaintiffs took no exceptions). Hipkins' estimate of annual income from this business was approximately $2,000 as indicated on defendant's exhibit 86. Hipkins' first contact with the Government was at a conference with Major Wallace at Aberdeen Proving Ground about May 1, 1930, and on July 1, 1930, Hipkins demonstrated one of his traction devices (see findings 8 and 10). The only period, therefore, for which Hipkins could be reimbursed for personal services and expenses in making tests and demonstrations for the Government would extend from May 1, 1930, to April 14, 1932. The total period of time is approximately two years (actually one year, eleven months and thirteen days). Hipkins kept no record of either the time or the expenses involved but now estimates that he carried on demonstrations and tests for the Government once or twice a week (see finding 19, to which plaintiffs have taken no exception).

Using Hipkins' own present estimate, which when averaged becomes one and one-half days a week, this would indicate a total of approximately 150 days' tests and demonstrations for period "A". In this connection, attention is directed to the first Government report dealing with a test of the Hipkins' device at Aberdeen. This document is entitled "First Partial Report on Test of Ford 1½ Ton Truck Equipped With the Hipkins Traction Device." This report refers to tests of the Hipkins device in June, July and September of 1931, and indicates a total test period of 12 days, which represents a considerable variance from the Hipkins' present estimate (see finding 12).

The next Government report in evidence is plaintiffs' exhibit 32, dated August 30, 1932, and is entitled "Second Partial Report on Hipkins Traction Device." This report refers to a test held for five days in June of 1932, which occurs in period "B", after the incorporation of the Hipkins Company.

Any claim for personal services rendered and expenses incurred by Hipkins as an individual accrued to him by April 14, 1932, when he became president of the Hipkins Company. Such claim was barred by April 14, 1938, by operation of the statute of limitations (see finding 21).

There is nothing in the present referred bill that waives the statute of limitations, and a report to Congress under section 2509, Title 28 United States Code, would have to suggest that any amount to be given to Hipkins individually would be a gratuity, or the recognition of a moral obligation. There is no record of expenses incurred by Hipkins.

Period "B" begins April 14, 1932, with the incorporation of the Hipkins Company and the assignment of certain patents thereto by Hipkins. As stated in finding 13, to which plaintiffs made no objection, the major purpose of the Hipkins Company was to sell traction devices to the Government and others.

On August 22, 1934, the Hipkins Company granted to the Lukens Steel Company an exclusive license until December 31, 1945, to make, use, and sell traction devices, reserving to the Hipkins Company the right to manufacture and sell not exceeding 3,000 sets of traction devices to the United States Government. This license agreement was assigned to the By-Products Steel Corporation of Coatesville, Pa., and royalties were paid to the Hipkins Company during this period at the rate of 10 to 20 percent of the net selling price. From October 1934 to December 1935, Hipkins was employed on a full-time basis by the By-Products Steel Corporation at an annual salary of $3,250. During this period of employment Hipkins did not demonstrate any traction devices nor make any tests for the Government. After Hipkins left the By-Products Steel Corporation he did not perform any services or incur any expense in connection with demonstrations or tests relative to traction devices for the Government, and there is no evidence that any of the plaintiffs or any else representing the Hipkins Company, other than Hipkins, at any time performed any services or incurred any expense in connection

■ 279

with tests and demonstrations of traction devices for the Government. (See finding 15, to which plaintiffs have made no objection.) See also the following sentence quoted from finding 19, to which plaintiffs have taken no exception:

"As to period 'B', following the incorporation of the Hipkins Company, in any demonstrations made by Hipkins for the Government he was acting as a representative of the Hipkins Company."

The only time that Hipkins made any demonstrations in period "B" was from April 14, 1932, when the Company was incorporated, to October 1934, when he became a full-time employee of the By-Products Steel Corporation, a total period of approximately two years and six months.

During the existence of the Hipkins Company the Government entered into seven supply contracts with them for traction devices, the contracts totalling 708 unit sets at a total price of $46,997.70. These are tabulated in finding 16, and all the traction devices called for in the contracts were delivered to defendant, and the Hipkins Company received full payment for them under the terms of the contracts. The Hipkins Company was therefore not only receiving royalties from its licensee but was manufacturing for the Government as well. The Hipkins Company during its life kept records of expenses and costs but such records have all either been lost or destroyed (see finding 19, to which plaintiffs have taken no exception).

■ Under these circumstances, it appears that the Hipkins Company would have no claim for services performed and expenses incurred for the Government. The demonstrations and tests on behalf of the Hipkins Company ceased in October 1934, when Hipkins became employed by the By-Products Steel Corporation. Any alleged claim was barred in October 1940 by the statute of limitations.

While we find that there was no legal obligation on the part of the Government to pay for the services rendered and to reimburse plaintiff Otho F. Hipkins for the expenses incurred; and while it is conceded that he was in the employ of the Government when the first two patents were applied for and granted; and while it is apparent from the record that his patents were not infringed by the Government's contracts, nevertheless we believe, upon consideration of the entire record, that the defendant received substantial benefits from the work and efforts of plaintiff Hipkins.

There is no doubt that there was a need on the part of the Army for a practical traction device for mobile vehicles. Plaintiff Hipkins constructed a traction device. There were a number of demonstrations at proving grounds. Some officials were interested. At one time the Chief of Ordnance asked plaintiff Hipkins to bring a section of the device to show him.

From this information and from information gained from other sources the defendant drew specifications for a traction device which it desired.

Practical devices are usually a matter of gradual development. We have no doubt that in fairness to plaintiff Hipkins he should be compensated for at least a part of his work while not in Government service and for the expense he incurred in making the demonstrations.

Unfortunately Hipkins kept no record either of the time or personal expenses involved. He made an estimate of the time he spent and the expense incurred, but the evidence on this point is not wholly satisfactory. During most of the period when he was not in Government service plaintiff Hipkins was engaged as a partner in the garage business or was working on a salary basis for the Hipkins Traction Device Company. Whatever is paid him would be in the nature of a jury verdict based on a consideration of the entire record.

### Recommendation

■ On the basis set out in the preceding paragraph we recommend to the Congress that the plaintiff Otho F. Hipkins be paid the sum of $5,000. This suggestion is addressed entirely to the discretion of the Congress.

HOWELL, MADDEN, WHITAKER and LITTLETON, JJ., concur.